# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | |
|---|---|
| **ALOFT MEDIA, LLC,** | |
| **Plaintiff,** | |
| **v.** | **Civil Action No. 2:08-cv-99** |
| **NOKIA, INC., et al.,** | |
| **Defendants** | **JURY TRIAL DEMANDED** |

## PLAINTIFF'S OPENING BRIEF REGARDING CLAIM CONSTRUCTION

Eric M. Albritton
Texas Bar No. 00790215
Craig Tadlock
Texas Bar No. 00791766
Adam A. Biggs
Texas Bar No. 24051753
ALBRITTON LAW FIRM
P.O. Box 2649
Longview, Texas 75606
Telephone: (903) 757-8449
Facsimile: (903) 758-7397

Scott E. Stevens
State Bar No. 00792024
Kyle J. Nelson
State Bar No. 24056031
STEVNS LAW FIRM
P.O. Box 807
Longview, Texas 75606
Tel: 903-753-6760
Fax: 903-753-6761

Thomas John Ward, Jr.
Texas Bar No. 00794818
WARD & SMITH LAW FIRM
P O Box 1231
Longview, TX 75606-1231
Telephone: (903) 757-6400
Facsimile: (903) 757-2323
jw@jwfirm.com

Danny L. Williams
Texas Bar No. 21518050
Christopher N. Cravey
Texas Bar No. 24034398
Matthew R. Rodgers
Texas Bar No. 24041802
Michael A. Benefield
Indiana Bar No. 24560-49
WILLIAMS, MORGAN & AMERSON, P.C.
10333 Richmond, Suite 1100
Houston, Texas 77042
Telephone: (713)934-4060
Facsimile: (713) 934-7011

**Attorneys for Plaintiff Aloft Media, LLC**

## TABLE OF CONTENTS

I.     BACKGROUND AND NATURE OF CASE ................................................................. 1

II.    APPLICABLE LEGAL PRINCIPLES............................................................................ 2

     A.     Claim Terms Used In Accordance With Their
                 Ordinary Meaning Do Not Require Construction................................................. 2

     B.     The Applicability of 35 U.S.C. §112, ¶ 6 ........................................................... 3

III.   CLAIM TERMS AT ISSUE .......................................................................................... 4

     A.     Defendants' Unnecessary or Overly Complex Proposed Constructions ............. 4

            1.     "operable to" ............................................................................................ 5

            2.     "depression" ............................................................................................. 6

            3.     "for a predetermined amount of time " ...................................................... 8

            4.     "automatically transmitted" ...................................................................... 9

            5.     "hot key" ................................................................................................ 10

     B.     Terms Defendants Contend Should be Construed
                 Under §112, ¶6 ................................................................................................ 12

            1.     "communication hardware" ..................................................................... 12

IV.   AGREED CONSTRUCTIONS ................................................................................... 15

V.    CONCLUSION........................................................................................................... 15

# TABLE OF AUTHORITIES

Cases

*800 Adept, Inc. v. AT&T Mobility, LLC*,
    No 5:07-CV-023, 2008 U.S. Dist. LEXIS 93179 ........................................................... 2, 3

*Apex, Inc. v. Raritan Computer, Inc.*,
    325 F.3d 1364 (Fed. Cir. 2003)..................................................................................... 5, 12

*Avocent Redmond Corp. v. Raritan Computer, Inc.*,
    No. 01 Civ. 4435 (PKC), 2005 U.S. Dist. LEXIS 4017 (D.N.Y. March 11, 2005).......... 12

*Greenberg v. Ethicon Endo-Surgery, Inc.*,
    91 F.3d 1580 (Fed. Cir. 1996)............................................................................................ 3

*In re Schreiber*,
    128 F.3d 1473 (Fed. Cir. 1997)..................................................................................... 5, 14

*Lighting World, Inc. v. Birchwood Lighting, Inc.*,
    382 F.3d 1354 (Fed. Cir. 2004)............................................................................... 4, 12, 14

*Markman v. Westview Instruments, Inc.*,
    52 F.3d 967 (Fed. Cir. 1995)............................................................................................. 2

*O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*,
    521 F.3d 1351 (Fed. Cir. 2008)......................................................................................... 2

*Orion IP, L.L.C. v. Staples, Inc.*,
    406 F. Supp. 2d 717 (E.D. Tex. 2005).............................................................................. 10

*Peer Comm. Corp. v. Skype Techs. SA*,
    No. 6:06-CV-370-LED-JDL, 2008 U.S. Dist. LEXIS 92683
    (E.D. Tex. May 29, 2008) ................................................................................................. 3

*Personalized Media Comms., L.L.C. v. Int'l Trade Comm.*,
    161 F.3d 696 (Fed. Cir. 1998)............................................................................... 4, 12, 13

*ReedHycalog UK, Ltd. v. Baker Hughes Oilfield Operations, Inc.*,
    No. 6:06-CV-222-LED, 2008 U.S. Dist. LEXIS 40877
    (E.D. Tex. May 21, 2008) .............................................................................................. 2, 3

*United States Surgical Corp. v. Ethicon, Inc.*,
    103 F.3d 1554 (Fed. Cir. 1997)............................................................................... 3, 5, 10

Statutes

35 U.S.C. §112, ¶6............................................................................................... passim

## I.      BACKGROUND AND NATURE OF CASE

In this case, Plaintiff Aloft Media, LLC ("Aloft") accuses Nokia, Inc., Nokia Corporation, Palm, Inc., Sony Ericsson Mobile Communications AB, and Sony Ericsson Mobile Communications (USA) Inc. (collectively "Defendants") of infringing U.S. Patent No. 7,330,715 ("the '715 patent").

The '715 patent discloses a communication apparatus that is generally capable of both vocal communication using voice over Internet Protocol ("VoIP") and exchange of contact information with other communication devices.  The claimed communication device further has the capability to upload the received contact information to a computer.  Optionally, the transmission of the received contact information to the computer may occur automatically. Independent claim 1 and dependent claim 5 are representative (disputed terms bolded):

1. An apparatus for providing communication between a first party and a second party, comprising:

a cellular phone of the second party **operable to** provide vocal communication between the first party and the second party, the cellular phone including:

a user interface **operable to** receive a first instruction during the vocal communication upon a **depression** of a **hot key** during the vocal communication, **for a predetermined amount of time**,

**communication hardware operable to** be responsive to the first instruction and generate a data message capable of including first contact information for being transmitted to the first party, the **communication hardware** further operable to receive second contact information from the first party, and

a display **operable to** display the received second contact information;

wherein the received second contact information is transmitted from the cellular phone of the second party to a computer of the second party, upon a receipt of a second instruction;

wherein the cellular phone is **operable to** provide the vocal communication utilizing a VoIP protocol.

5. The apparatus as recited in claim 1**,** wherein the received second contact information is **automatically transmitted** from the cellular phone of the second party to the computer of the second party.

## II.   APPLICABLE LEGAL PRINCIPLES

In recognition of the Court's claim construction expertise, this section will only address two areas of claim construction law.  The first area is the propriety of construing a claim term in accordance with its plain and ordinary meaning in light of the Federal Circuit's recent decision in *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351 (Fed. Cir. 2008).  The second area involves the circumstances under which claim terms should be construed according to 35 U.S.C. §112, ¶6.

### A.     Claim Terms Used In Accordance With Their Ordinary Meaning Do Not Require Construction

Claim construction is a matter of law, and is therefore within the province of the Court. *Markman v. Westview Instruments, Inc.,* 52 F.3d 967, 977-79 (Fed. Cir. 1995) (en banc).  "The purpose of claim construction is to resolve disputed meanings and technical scope of claim limitations, clarifying and when necessary explaining claim scope, so the fact finder may determine infringement." *ReedHycalog UK, Ltd. v. Baker Hughes Oilfield Operations, Inc.*, No. 6:06-CV-222-LED, slip op. at 2, 2008 U.S. Dist. LEXIS 40877, at *5 (E.D. Tex. May 21, 2008) (citing *O2 Micro*, 521 F.3d at 1362) (quoting *U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997)).

Although claim construction is a matter of law, the Court is not "required to provide a new definition or rewrite a term," such as when a term carries its plain and ordinary meaning. *800 Adept, Inc. v. AT&T Mobility, L.L.C.*, No 5:07-CV-023-CMC, 2008 U.S. Dist. LEXIS

93179, at *29-30 (E.D. Tex. July 23, 2008).   Rather, the Court's obligation is to resolve the parties' fundamental disputes regarding the scope of the asserted claims.  *ReedHycalog UK, Ltd.*, No. 6:06-CV-222, slip op. at 2, 2008 U.S. Dist. LEXIS 40877, at *5 (citation omitted).   In the event the Court resolves the parties' fundamental claim construction dispute, such as by rejecting certain proposed constructions, the Court may decline to construe a term and instead rely on the term's plain and ordinary meaning in light of the Court's claim scope rulings.  *See id.* at *5-6, n. 2 (construing a term in accordance with its ordinary meaning, yet defining the scope of the claim by circumscribing the parties arguments to the jury); *800 Adept, Inc. v. AT&T Mobility, LLC*, No 5:07-CV-023, 2008 U.S. Dist. LEXIS 93179, at *35 (citations omitted) ("A court may decline to adopt constructions that violate claim construction doctrine, such as improperly importing limitations, and may still construe terms to have their ordinary meaning.); *Peer Comm. Corp. v. Skype Techs. SA*, No. 6:06-CV-370-LED-JDL, 2008 U.S. Dist. LEXIS 92683, at *9-10 (E.D. Tex. May 29, 2008) (declining to construe a disputed claim term).   Therefore, when the scope of a claim is clear, it is proper for the Court to construe a term in accordance with its ordinary meaning.

### B.      The Applicability of 35 U.S.C. §112, ¶ 6

Use of the word "means" is highly determinative as to whether §112, ¶ 6 applies to a claim limitation.  As the Federal Circuit stated in *Greenberg v. Ethicon Endo-Surgery, Inc.,* 91 F.3d 1580, 1584 (Fed. Cir. 1996), "the use of the term 'means' has come to be so closely associated with 'means-plus-function' claiming that it is fair to say that the use of the term 'means' (particularly as used in the phrase 'means for') generally invokes section 112(6) and that use of a different formulation generally does not."   None of the disputed claim terms use the words "means," thus giving rise to a "strong" presumption that §112, ¶ 6 does not apply.

*Personalized Media Comms., L.L.C. v. Int'l Trade Comm.*, 161 F.3d 696, 703-04 (Fed. Cir. 1998); *see also Lighting World, Inc. v. Birchwood Lighting, Inc.*, 382 F.3d 1354, 1358 (Fed. Cir. 2004) ("The presumption flowing from the absence of the term 'means' is a strong one that is not readily overcome.") (citations omitted).  Indeed, the Federal Circuit has observed that "we have seldom held that a limitation not using the term 'means' must be considered to be in means-plus-function form."  *Id.* at 1358.

III.   **CLAIM TERMS AT ISSUE**

As discussed above, the instant disputes fall within two categories: (A) terms wherein Defendants propose unnecessary and/or complex constructions for straightforward terms and phrases, and (B) one term ("communication hardware") that Defendants contend should be construed according to §112, ¶6.

   A.   **Defendants' Unnecessary or Overly Complex Proposed Constructions**

Aloft believes that no construction is necessary for the following terms: "operable to," "depression," "for a predetermined amount of time," "communication hardware,"[1] and "automatically transmitted."   During the claim construction meet and confer process, in an attempt to narrow the issues before the Court, Aloft proposed definitions for several of these terms by adopting the portions of Defendants' definitions that did not render the terms less clear to the jury and contradict the intrinsic evidence.  Aloft will advance its proposed compromise constructions below in an effort to continue to narrow the issues, although Aloft respectfully suggests that the terms need no construction.  Similarly, Aloft has proposed a straightforward, three word construction for "hot key" which will be likewise contrasted with Defendants' needlessly complex, twenty-two word definition.   Claim construction should resolve the

---

[1] Aloft believes that no construction of the straightforward term "communication hardware" is necessary; however, in view of Defendants' belief that term should be construed according to §112, ¶6, Aloft discusses this term in Section III(B).

"meaning or scope of technical terms and words of art," not result in construction of every term in every claim. *United States Surgical,* 103 F.3d at 1568.  Further, proposed constructions that increase the complexity of terms which would otherwise be well understood by the jury are obviously incorrect.

### 1.    "operable to"

| Aloft's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| No construction is required. | "containing all the necessary hardware and software to perform the described function" |

There can be little question that the jury will be familiar with a phrase as ubiquitous as "operable to."  This phrase occurs throughout the claims and is generally used to further define claimed structure in terms of its functionality.  Such a use is perfectly permissible under established Federal Circuit precedent.  *See In re Schreiber*, 128 F.3d 1473, 1478 (Fed. Cir. 1997).

Defendants' proposed construction is plainly geared towards advancement of a forthcoming non-infringement argument regarding whether certain accused devices are "operable to" provide the claimed functionality.  The Markman process is not the proper forum for settling infringement disputes.  At any rate, nothing in the claims suggests the definition advanced by Defendants.  The specification further counsels against Defendants' proposed construction in that it employs broad phrases such as "adapted for,"[2] when discussing the data transmission that occurs via the claimed communication device.  Nowhere does the specification state or suggest that Defendants' overly narrow and wordy proposed construction is what is

---

[2] Ex. 1, '715 patent at 1:56.

required for the claimed invention to be "operable to" perform the capability set out in the claims.

Finally, the Examiner's understanding of the claimed invention does not comport with or require the adoption of Defendants' proposed construction.  In describing what he considered to be the closest prior art, the Examiner noted that two prior art references disclosed "a cellular phone including communication hardware ***operable to*** be responsive to the first data message."[3] The Examiner did not go on to describe in detail how the references "contain[ed] all the necessary hardware and software to perform the described function."[4]  That is because the Examiner understood the term "operable to" to be easily understood and thereby gave notice to the public via his use of the term without caveat or restriction that it should be well understood. The Examiner further ratified the use of the term when it was used in the Examiner's Amendment that matured into issued claim 1.[5]

### 2.    "depression"

| Aloft's Proposed Construction | Defendants' Proposed Construction |
| --- | --- |
| "the act of exerting force against" | "the act of exerting force against an object to move it to a lower position" |

Aloft's proposed construction is the result of the previously mentioned efforts to compromise during the claim construction meet and confer process.  The specification does not require that the depressed key actually be moved to a lower position, nor does the prosecution history, and Defendants make no attempt to point to the intrinsic record in their Patent Rule 4-3 filing for specific support for their position that the depressed key actually must be moved to a

---

[3] Ex. 2, Examiner's Amendment at 5 (emphasis added).

[4] *Id.*

[5] *Id.* at 2-3.

lower position.  In fact, Figure 2 of the '715 patent suggests otherwise.  In explaining the "depression of a hot key" limitation found in claim 1, the figure simply states "John presses Hot Key…"[6]  Accordingly, the intrinsic record teaches that "depress" simply means to "press" or "push," i.e. exert a force against.  The requirements being placed on this straightforward term find no support in the intrinsic record, and Defendants will be forced to rely totally on extrinsic evidence to further their position.

Plaintiff is unclear as to Defendants' motives in requiring the "lower position" except perhaps to further a non-infringement argument with respect to touch screens or similar devices where the user does not perceive that the key being pressed has actually been moved to a lower position.  For example, Defendants cite, as extrinsic evidence supporting their construction, the following excerpt:

> Other Direct selection keyboards rely on a touch membrane or touch screen surfaces.  A touch membrane keyboard consists of two electrically conductive flat surfaces separated by nonconductive spacers.  Touching the keyboard lightly presses the two surfaces together which sends an electronic signal to the AAC systems.  Many computer touch screens operate similarly. When using a touch screen, the user does not feel any physical depression of the surface.[7]

Therefore, with respect to at least some types of potentially infringing devices with touch screens, Defendants' proposed construction would mislead the jury into believing that certain keys were not being depressed because the user does not "feel" a lowering of the key, even though may be imperceptibly moved to a lower position.[8]  Defendants' proposed construction should be rejected for this reason alone.

---

[6] Ex. 1, '715 patent, Fig. 2.

[7] Ex. 3 at 3, Sharon L. Glennen and Denise C. DeCoste, *The Handbook of Augmentative and Alternative Communication 63* (Singular Publ'g Group 1997) (cited by Defendants in the parties' Patent Rule 4-3 paper, Ex. B).

[8] Aloft does not concede that a key must actually be moved to a lower position when being "depressed."  Other types of touch screen technology, such as capacitance touch screens, may or may not move to lower position when a

### 3.  "for a predetermined amount of time "

| Aloft's Proposed Construction | Defendants' Proposed Construction |
| --- | --- |
| No construction is required. | "a period of time determined beforehand during which the user interface can receive a first instruction" |

The claim phrase containing this disputed term is as follows:

a user interface operable to receive a first instruction during the vocal communication upon a depression of a hot key during the vocal communication, **for a predetermined amount of time**

The dispute regarding this term centers not on its actual meaning, but on which functionality of the claimed invention the term modifies.  Defendants claim that the phrase "for a predetermined amount of time" modifies the window of time during which the user interface will be operable to receive a first instruction.  Aloft, on the other hand, believes the claim should be interpreted as it is written; specifically, that the phrase modifies the length of time the hot key is depressed.  Aloft's position is supported by the intrinsic record, whereas Defendants' tortured interpretation is contradicted by the intrinsic record.

The only time the specification employs the phrase "for a predetermined amount of time" or even touches on the concept, it occurs in conjunction with a discussion of depression of the hot key:

---

key is depressed.  One of ordinary skill in the art of the claimed communication devices would certainly not be slicing it as thin as perhaps the kinesthetics experts on whom Defendants seem to be focused.   This is evidenced by Defendants' claim construction expert, Dr. Conte, who does not opine that one of ordinary skill in the relevant art would draw the ethereal distinction between "press" and "depress" that Defendants are apparently advancing.  See Ex. 4, Defendants' Patent Rule 4-3 Disclosure of Expert Opinion.

> It should be noted that the instruction may be received during or after the vocal communication. For example, the instruction may be received upon the depression of a hot key during the vocal communication, for a predetermined amount of time.[9]

To be clear, there is no discussion anywhere in the intrinsic record involving the concept of rendering the claimed device operable to receive a first instruction for any particular window of time. Therefore, there is no disclosure or discussion of what that window of time is, how long it is, what triggers its beginning or end, or how the user might be aware the window was open or closed. The absence of any such discussion strongly suggests that the applicant did not intend the phrase "for a predetermined amount of time" to modify when the device may be operable to receive the first instruction. Instead, it supports Aloft's position that the phrase modifies the depression of the hot key. Defendants' anticipated reliance on the presence of a single, arguably misplaced comma in the claim illustrates the tenuous nature of their position.

### 4.      "automatically transmitted"

| Aloft's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| "transmitted without human intervention" | "transmitted without human intervention after receipt of the second instruction". |

Aloft does not believe the term "automatically transmitted" requires a construction, but in the spirit of compromise has agreed to the non-objectionable portion of Defendants' proposed construction. However, Aloft believes that the limitation placed on the timing of the automatic transmission is superfluous and will be confusing to the jury. The disputed term occurs in dependent claim 5, which further limits the "transmitted" limitation found in independent claim 1 and requires the transmission to be automatic. However, claim 1 already requires the transmission to occur "upon receipt of the second instruction." Therefore, if Defendants'

---

[9] Ex. 1, '715 patent at 2:8-15.

position is adopted, the jury will essentially be presented with the following extremely confusing

interpretation of claim 1 as further limited by claim 5:

> wherein the received second contact information is ~~transmitted~~ <u>transmitted</u>
> <u>without human intervention after receipt of the second instruction</u> from the
> cellular phone of the second party to a computer of the second party, upon
> a receipt of a second instruction.[10]

Defendants' proposed construction renders the final portion of the claim element superfluous.

Therefore, Defendants' improper construction violates the basic tenet of claim construction that

all claim terms have a meaning. *Orion IP, L.L.C. v. Staples, Inc.*, 406 F. Supp. 2d 717, 738 (E.D.

Tex. 2005) (noting that "every word used in a claim has a meaning.").

　　　5.　　　"hot key"

| Aloft's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| "a shortcut key" | "a depressed single key which causes the generation of the first instruction which could otherwise be accomplished through a sequence of steps" |

Aloft's simple construction merely clarifies for the jury that the hot key is intended to

provide a shortcut for initiating the process of transmitting contact information, as the phrase

"hot key" is a technical term which justifies a clarifying construction. *United States Surgical*,

103 F.3d at 1568.

Aloft's construction is supported by the intrinsic and extrinsic evidence. For example,

Figure 2 of the '715 patent discloses that pressing the hot key "causes transmission of contact

information." Therefore, it is clear that pressing the hot key is involved in the series of events

that may be involved in causing the transmission of contact information. What Figure 2 does <u>*not*</u>

---

[10] Shown is the element at issue in claim 1 with the limitation found in independent claim 1 struck through and the further limiting language of claim 5 added (as Defendants propose it should be construed) in underline text.

say (and could not in light of dependent claim 2—as discussed below) is that pressing the hot key causes the generation of the first instruction without any intervening steps.

The extrinsic evidence cited by Defendants further supports Aloft's proposed construction. For example:

> Hot Key: **A keyboard shortcut** to a command or tool without accessing it through a menu. For example, the menu selections required to switch the camera view to an orthographic camera of a particular object could simply be assigned to the "F1" key. Also called keyboard shortcut, accelerator.[11]

Defendants can cite to no portion of the intrinsic record to support their proposed construction. In fact, the presence of dependant claim 2 demonstrates precisely why Defendants' position is incorrect. Claim 2 provides as follows:

> 2. The apparatus as recited in claim 1**,** wherein the user interface is operable to output a prompt and receive the first instruction, in response to the prompt.

Basic principles of claim construction dictate that claim 2 is necessarily within the scope of claim 1 upon which it depends. However, if claim 1 requires the generation of the first instruction in a single step in response to depression of the hot key, as Defendants contend, claim 2 then becomes more broad in scope than claim 1—an impossible result. Claim 1 requires that the claimed device become operable to receive a first instruction upon depression of the hot key. Claim 2 further requires the output of a prompt and that the first instruction is received in response to the prompt. Therefore, the prompt and the response to the prompt must, by necessity, occur in between the time the hot key is depressed and the first instruction is generated. But Defendants' construction forecloses this situation by eliminating the possibility

---

[11] Ex. 3 at 5, Karen E. Goulekas. *Visual Effects in a Digital World: A Comprehensive Glossary of Over 7000 Visual Effects Terms* 235 (2001). (cited by Defendants in the parties' Patent Rule 4-3 paper, Ex. B) (emphasis added).

of a sequence of steps leading to the generation of the first instruction.  Defendants' construction renders an entire claim meaningless and should be rejected.

### B.   Terms Defendants Contend Should be Construed Under §112, ¶6

#### 1.   "communication hardware"

| Aloft's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| No construction is required. | Construe under 35 U.S.C. §112, ¶6.  Structure disclosed: none |

Defendants' argument that "communication hardware" should be construed in accordance with §112, ¶ 6 is contradicted by Federal Circuit precedent.  At the outset, it should be noted that the claims do not contain the word "means," thus establishing a strong presumption that §112, ¶6 does not apply.  *Lighting World,* 382 F.3d at 1358.  This presumption is not readily overcome. *Id.*  The use of the term "means" is "central to the analysis." *Personalized Media Comms.*, 161 F.3d at 703.

In *Apex, Inc. v. Raritan Computer, Inc.,* 325 F.3d 1364, 1372 (Fed. Cir. 2003), the Federal Circuit held that "the term 'circuit,' by itself connotes some structure," and stated that "[i]n the absence of any more compelling evidence of the understanding of one of ordinary skill in the art, the presumption that §112, ¶ 6 does not apply is determinative."  On remand from the Federal Circuit, the district court was left to decide whether terms such as "on-screen programming circuit," "analog video overlay image generating circuit," "signal conditioning units," "analog video overlay circuit," and "analog video receiving circuit" should be construed in accordance with §112, ¶ 6.  In each instance, the district court found that the term should <u>not</u> be construed in accordance with §112, ¶6 because the terms connote structure to one of ordinary skill in the art.  *Avocent Redmond Corp. v. Raritan Computer, Inc.*, No. 01 Civ. 4435 (PKC), 2005 U.S. Dist. LEXIS 4017, *10-16 (D.N.Y. March 11, 2005).  This same reasoning is equally

applicable to the "communication hardware" limitation that is now before the Court.  *See also*

*Greenberg,* 91 F.3d at 1583, (holding that a "detent mechanism" limitation was not a means-

plus-function limitation).  "The fact that a particular [claim term] is defined in functional terms is

not sufficient to convert a claim [limitation] into a 'means for performing a specified function'

within the meaning of 112(6)."  *Id.*

"Hardware," of course, connotes structure in the well understood art of the claimed

communication devices.  That the hardware is operable for certain communication capabilities

connotes further structure in terms of its function.  As the Federal Circuit has stated:

> an adjectival qualification ("digital") placed upon otherwise sufficiently definite
> structure ("detector") does not make the sufficiency of that structure any less
> sufficient for purposes of § 112, P 6. Instead, it further narrows the scope of those
> structures covered by the claim and makes the term more definite. The use of the
> word "digital" in conjunction with the word "detector" merely places an additional
> functional constraint (extraction of digital information) on a structure (detector)
> otherwise adequately defined.

*Personalized Media Comms.*, 161 F.3d at 705 (declining to construe "digital detector" pursuant

to §112, ¶6).

Additionally, specific functionality is laid out in the requirements of the claims

themselves.   The communication hardware must specifically be operable to perform the

following functions:

- generate a data message responsive to the first instruction, where the data message is
  capable of including first contact information for being transmitted to the first party
  (claim 1);

- receive second contact information from the first party (claim 1);

- generate a data message responsive to the first instruction, where the data message is
  capable of including first contact information for being transmitted to the first party
  (claim 6);

- receive second contact information from the first party (claim 6);

- transmit the first contact information during the vocal communication (claim 6);

- generate a data message responsive to the first instruction, where the data message is capable of including first contact information for being transmitted to the first party (claim 8);

- receive second contact information from the first party (claim 8);

- transmit the first contact information to the first party utilizing a messaging service protocol (claim 8);

- receive the second contact information from the first party utilizing the messaging service protocol (claim 8);

- generate a data message responsive to the first instruction, where the data message is capable of including first contact information for being transmitted to the first party (claim 10);

- receive second contact information from the first party (claim 10);

- transmit the first contact information to the first party utilizing a cellular phone messaging service protocol (claim 10);

- receive the second contact information from the first party utilizing the cellular phone messaging service protocol (claim 10); and

- transmitting different contact information to different parties (claim 10).

Even a lay person knows that communication devices, such as the accused cellular phones, have "communication hardware." "It is sufficient if the claim term is used in common parlance or by persons of skill in the pertinent art to designate structure, even if the term covers a broad class of structures and even if the term identifies the structures by their function." *Lighting World,* 382 F.3d at 1359-60. Despite Dr. Conte's apparent intent to testify contrary to established Federal Circuit precedent, it is clear that a term such as "communication hardware" connotes sufficient structure to one of skill in the art, much like "circuitry," particularly when coupled with the functionality described in the claims. Further defining a known structure, such as

communication hardware, in terms of its function is a well-established and acceptable practice in claim drafting. *Id.*

## IV.   AGREED CONSTRUCTIONS

The parties have agreed on the following constructions and respectfully request the entry of these constructions by the Court:

| Term | Agreed Construction |
|---|---|
| "during the vocal communication" | During the telephone call |
| "Provide the vocal communication utilizing a VoIP protocol" | Provide the telephone call using a voice over internet protocol |
| "palm computer" | A computer small enough to be held in one hand |
| "messaging service protocol" | A communications protocol allowing the interchange of messages |
| "responsive to the first instruction and generate a data message" | Generate a data message in response to the first instruction |
| "contact information" | Information about a person/entity used to establish communications with that person/entity |
| "prompt" | Output indicating that a cellular phone is waiting for input from the user |

## V.   CONCLUSION

Defendants' proposed constructions are not only without support in the intrinsic record, but an apparent attempt to rewrite the claims to further certain non-infringement and/or invalidity

positions.  Therefore, Aloft respectfully requests that the Court adopt Aloft's claim construction

positions and reject those improperly advanced by Defendants.

DATED:  May 12, 2009                 Respectfully submitted,

                  _/s/ *Danny Williams*____
                 Eric M. Albritton
                 Texas Bar No. 00790215
                 Craig Tadlock
                 Texas Bar No. 00791766
                 Adam A. Briggs
                 Texas Bar No. 24051753
                 ALBRITTON LAW FIRM
                 P.O. Box 2649
                 Longview, Texas 75606
                 Telephone: (903) 757-8449
                 Facsimile: (903) 758-7397
                 ema@emafirm.com
                 cct@emafirm.com
                 aab@emafirm.com

                 Thomas John Ward, Jr.
                 Texas Bar No. 00794818
                 WARD & SMITH LAW FIRM
                 P O Box 1231
                 Longview, TX 75606-1231
                 Telephone: (903) 757-6400
                 Facsimile: (903) 757-2323
                 jw@jwfirm.com

                 Danny L. Williams
                 Texas Bar No. 21518050
                 Christopher N. Cravey
                 Texas Bar No. 24034398
                 Matthew R. Rodgers
                 Texas Bar No. 24041802
                 Michael A. Benefield
                 Indiana Bar No. 24560-49
                 WILLIAMS, MORGAN & AMERSON, P.C.
                 10333 Richmond, Suite 1100
                 Houston, Texas 77042
                 Telephone: (713)934-4060

Facsimile: (713) 934-7011
danny@wmalaw.com
ccravey@wmalaw.com
mrodgers@wmalaw.com
mbenefield@wmalaw.com

Scott E. Stevens
State Bar No. 00792024
Kyle J. Nelson
State Bar No. 24056031
STEVNS LAW FIRM
P.O. Box 807
Longview, Texas 75606
Tel: 903-753-6760
Fax: 903-753-6761
scott@seslawfirm.com
kjn@seslawfirm.com

***Attorneys for Aloft Media, LLC***

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3).  Any other counsel of record will be served by facsimile transmission and/or first class mail this 11th day of May, 2009.

/s/ Riny Pieternelle